## John Maduska, et al., v. Alice A. Thomas.

1. JURY TRIALS—RIGHT OF—*Polling Jury—Verdict.* In an action in which the parties are entitled to a trial by jury, and where the parties have not waived a jury trial, it is error for the court to render a judgment upon the issues therein, except upon the verdict of a jury.

2. —— When either party demands that the jury shall be polled, it is error for the court to receive the verdict and render judgment upon it, without first polling the jury; and it makes no difference whether the verdict has been rendered without the jury retiring from the court room or not.

3. —— A verdict of any less number than twelve jurors, is not a verdict of the jury.

4. CONTRACT EXECUTED—ESTOPPEL. A contract was made for the purchase and sale of certain lots in Leavenworth city, while the title to the lots was still held by the government of the United States in trust for the Delaware Indians. After the vendor and his heir have received all the benefits accruing to them by virtue of said contract, the heir sues the grantee of the vendee to recover of him said lots: *Held*, That the heir is estopped from asserting that said contract is void, and his claim to said lots cannot be maintained.

*Error from Leavenworth District Court.*

EJECTMENT, brought by *Alice. A. Thomas*, as plaintiff, against *John Maduska* and *Joseph Bazel*, to recover the possession of lots 11 and 12, in block 24, in Leavenworth. The case was tried before a court and a jury. The plaintiff below gave in evidence patents for each of the lots from the United States to " *The heirs of Malcolm*

*Clark,*" by that general description, and proved that Alice A. Thomas, the plaintiff, was the only living child and heir of the said Malcolm Clark. The patents are dated Sept. 15, 1864.

The defendants below gave in evidence a certain instrument, executed by Malcolm Clark in his lifetime, dated April 15, 1855, whereby said Clark sold to one Jacob Sass the lots in question, " for the consideration of four hundred dollars, one-half of which said sum is in hand paid, the other half of which said sum is secured to be paid by note, payable so soon as the title to said lots shall be secured to the said Jacob Sass or his assigns, whether by the act of said Clark, or otherwise." And the said Clark bound himself, his " heirs, executors and administrators, to make to said Jacob Sass a quit claim deed for said lots so soon as the said balance of the consideration shall be paid." Defendants also proved Sass went into possession of the lots under his purchase; and they also gave in evidence the proceedings of the probate court of Leavenworth county, in which the specific performance of said contract was ordered against the administrator of said Clark, on the payment of the balance of the purchase money, and the deed by the administrator to Sass, and a conveyance by Sass to *Maduska,* one of the defendants. It was admitted that the lands were in the " Delaware Trust Cession."

The subsequent proceedings are fully stated in the opinion of the court. Judgment was rendered for the plaintiff, and the defendants bring the case here on error.

*James McCahan,* for plaintiffs in error:

1. It was competent for Clark to bind himself to convey lots to which he had, at the time, no title, and when he acquired the title he could not avoid the obligation.

Chitty on Con., 275; *Hogg v. Wilkins*, 1 Grant's Cases, 67; 24 How. U. S., 322; 11 Texas, 2.

It is sufficient that the obligor in such a case have a good title when the obligation is sought to be enforced. 2 Johns., 595; 7 Paige, 77.

When a contract is made for the sale of land, equity considers the vendor as a trustee for the purchaser of the land sold, and the purchaser as a trustee of the purchase money for the vendor, Sug. on Vend., 226; 2 Story's Eq., § 1212; 26 Penn. St., 178; 6 John. Ch., 398; 33 Me., 530, 534.

2. The contract of Clark to sell the lots to Sass was not void, as being in contravention of the treaty in relation to the Delaware trust lands. *Fackler v. Ford*, 24 Howard, 322. If Clark could not avoid the contract, neither can the heir. 59 Penn. St., 286; 2 Watts, 226; 7 Johns., 161. And especially as the heir is named therein. 4 Kent Com., 419; Sug. on Vend., 224; 3 Bibb, 23; 7 Blackf., 373; 1 A. K. Marshall, 363; 2 Hay, 128.

The heir is bound to show a want of assets to avoid the obligation. 3 Term R., 685; 59 Penn. St., 281; 3 Chitty Pl., 974; 2 Watts, 226. And the heir cannot accept the benefit of the purchase, and repudiate the burdens attached to it by the ancestor. Broom's Leg. Max., 174; 3 My. and K., 252; 4 Russ., 478.

3. The refusal of the court to submit the case to the jury was arbitrary, unwarranted, and a palpable violation of law. The evidence of the defense was admitted. It was before the jury. There were several questions of fact to be determined. Among these were, whether the heir had sufficient assets by descent, and from what source the purchase money of the lots was derived.

These were material questions in the case, and they were for the jury to determine.

It is undoubtedly the province of the court to instruct the jury on questions of law, and if the jury find contrary to law, to set aside the verdict; but it is not within the power of the court to make the jury a mere instrument to register its edicts. The jury is a creature of the law, not of the court. It is a tribunal created by law, with certain defined powers. So is the court. They each have their province, and one cannot invade that of the other. 2 Gra. & Wat., 362, 363, 364; 33 Mo., 202, 482; 26 Mo., 522; 2 Gill., 410; 6 Penn. St., 179.

4. The refusal to permit the jury to be polled was also an arbitrary violation of a plain statutory provision, and utterly unjustifiable in any aspect of the case. Code of 1868, §§ 283, 284; 2 Wend., 619; 3 Cow., 23; 4 N. Y., 547.

The verdict was incomplete and invalid, and not sufficient to sustain a judgment.

The defendants below established a complete defense, not only in law, but according to every principle of justice and right. This was so evident that, in order to avoid a verdict for the defendants, the court directed the jury to sign a verdict for the plaintiff, and, to smother their dissent, refused to permit them to be polled.

It has been a favorite theory that government is instituted and courts created to establish justice; but if the proceedings in this case can be sustained, we must conclude that that theory is false, and that courts may establish injustice instead of justice.

*Clough & Wheat*, for defendant in error:

1. Clark's contract was made before the government

sold the lots composing Leavenworth city under the treaty with the Delawares made in May, 1854, and is void.

The sales of the lots in Leavenworth were made in February, 1857, of which time courts will take judicial notice, as it is a part of the public history of the Territory of Kansas. 4 Kas., 17; 1 Kas., 165; Articles 12 and 16 of Treaty, 10 U. S. St. at Large, p. 1048, 1049, 1051; 10 Sme. & Marsh., 596; 9 Minn., 259.

Whether said contract was void or not, Clark did not thereby bind himself to procure a legal title for Sass. His contract to convey by quit-claim had reference to the title he then had, and was not intended to refer to and would not have included a title acquired by himself after the execution of said contract. 37 Miss., 567; 9 Cowen, 13, 18. Maduska had no right to any after-acquired title. 11 Ohio, 475.

2. The evidence showed that plaintiff was the legal owner of the land, and as such entitled to a verdict; and it was the duty of the court to direct a verdict for her; and especially so as a verdict against her would be set aside as contrary to law. 1 Kas., 304; 8 N. Y., 72, 80, and cases cited. 7 Ind., 78; 19 Wis., 24; 40 New York, 181, 473.

3. There was no error in refusing to let the jury be polled. The legislature has, in effect, said that a party may *require* a jury to be polled *only* when the cause has been *submitted* to them to retire and deliberate upon the evidence, and they have *retired* and *returned* into court, and then if either juror disagrees, *the jury must be sent out again.* Code, §§ 278, 282, 283.

4. Independent of any and all other reasons, we claim

that the case of *Stone v. Young,* 4 Kas., 17, is in point, and conclusively shows the aforesaid contract to be void; and as that case has been in force several years, it ought, as. a rule of property, to remain undisturbed. If any questions ought, in this State, to be considered settled, we submit the proposition that said contract is void, should be one of them.

The opinion of the court was delivered by

VALENTINE, J.: The defendant in error, who was plaintiff in the court below, brought his action to recover Lots 11 and 12, in Block 24, in Leavenworth city, in this State. The action was tried before a jury. The record shows the following proceedings at the close of the trial:

"The court instructed the jury to find for the plaintiff. The defendants then requested the court to submit the case to the jury, which the court refused to do, to which ruling and decision of the court the defendants at the time excepted. The court then instructed the jury to find a verdict for the plaintiff, to which instruction the defendants at the time excepted. The court then directed the clerk to write out a verdict for the plaintiff, and hand it to the jury to be signed. The clerk drew up a verdict as follows: ' *We the jury find for the plaintiff,*' and presented it to the jury. Several of the jurors refused to sign it, when Jacob Ketner signed it as foreman, and returned it to the clerk, when it was read to the jury. The defendants then demanded that the jury be polled, which the court refused to permit, to which ruling and decision of the court the defendants at the time excepted.

"The jury were then discharged. The defendants moved the court for a new trial for various reasons, which motion the court overruled, and the defendants excepted; and thereupon the court rendered judgment in favor of the plaintiff, and against the defendants for the recovery of the property in controversy, and for costs, to which judgment the defendants at the time excepted."

This judgment is unquestionably erroneous. In a con-

tested case, the judgment, to be valid, must be founded upon the findings of a court, the report of a referee, or the verdict of a jury. It will not be claimed that this judgment is founded upon the report of a referee. It will hardly be claimed that it is founded upon the findings of the court; for in a case like this, which can be tried by a jury only, unless the jury is waived, the court has no authority to make any findings. And it cannot be claimed that the judgment is founded upon a verdict of the jury; for the record does not merely fail to show that the supposed verdict was the verdict of the jury, but it clearly shows that it was not such verdict. The most that can be said in favor of the plaintiff, with reference to said verdict, is, that the jury disagreed.

*1. Trial by jury— right of.*

With all the instructions of the court, only one juror was found to sign the verdict. Several of the jurors refused to sign it; and others expressed no opinion; and the court refused to allow the jury to be polled. Here the court erred. The verdict of a jury is the verdict of each, and every juror. The verdict of eleven jurors, or any less number than twelve, is not the verdict of the jury. A party has, in all cases, a right to know whether a supposed verdict is the verdict of each juror, or of only one or more of the jury; and if sections 283 and 284 of the civil code, (Gen. St. 1868, p. 683,) do not apply where the jury decide, without retiring from the jury box, still the common law would give each party the right to know the verdict of each juror.

*2. Jury must be polled, if demanded.*

*3. Verdict defined.*

II. It is claimed however, that if the court did err in refusing to submit the case to the jury, in refusing to permit the jury to be polled, and in rendering a judgment without a proper verdict to

*4. CONTRACT— when it cannot be avoided.*

sustain it, still the error did not affect the substantial rights of the defendants, and therefore they have no good reason to complain. We do not think it is very obvious from the record, that the substantial rights of the defendants were not affected. On the contrary, we think the record tends to show that the substantial rights of the defendants were materially affected by the error of the court.

The facts in the case are not found by the jury, but the evidence tends to show the following facts : On the 19th day of April, 1855, while the government of the United States still held the title to the lots in dispute, in trust for the Delaware Indians, Malcolm Clark, the ancestor of the plaintiff, sold said lots to Jacob Sass, the grantor of the defendants, for four hundred dollars, and received one-half of the same down, and the other half in a promissory note payable when said Sass should receive the title to said lots; and Clark bound himself, his heirs, executors, and administrators, to make to Sass a quit-claim deed for said lots, when said note should be paid. Afterwards Clark died, and his administrator bought said lots of the government at the Delaware land sales, paying therefor five dollars each, from the funds of Clark's estate, and the patent was made to the " *heirs*" of said Clark. Afterwards, Sass paid the amount of said note to the administrator of Clark's estate, which amount undoubtedly became a part of the assets of the estate, and has in all probability been paid over to the plaintiff who is the sole heir of said Clark. Now, if the proof upon all these points was sufficient, the defendants had a good defense to the plaintiff's action. It cannot be contended for Clark, nor by his heir, that the contract between Clark and Sass is void. (*Fackler v. Ford,* 24

Howard, 322.) After Clark and his heir have received, by virtue of said contract, four hundred dollars, in the aggregate, of Sass's money, three hundred and ninety dollars more than the lots cost, no rule of law or equity would permit the heir to repudiate her ancestor's contract. She cannot enjoy the benefits of such contract, and at the same time repudiate its burdens. She cannot hold the money, and also hold the lots. The law cannot permit such gross injustice. For authorities we refer to counsels' briefs.

The judgment of the court below is reversed, and the case remanded for a new trial.

All the Justices concurring.