## J. P. BROWN, *et al.*, v. THE CITY OF ATCHISON.

1. CITY BONDS—*Re-funding*—*Contract and Additional Bonds, Void.*
Where a city of the second class re-funds a portion of its outstanding bonded indebtedness at sixty cents on the dollar under a statute, (chapter 89, Laws of 1877,) which permits the city to re-fund such indebtedness at only that rate, and at the same time, and as a part of the same transaction, the city enters into a contract with the holders of the original bonded indebtedness to issue still other and additional bonds on the same bonded indebtedness, and to deposit such additional bonds with a third party, to be afterward delivered to the holders of the original bonded indebtedness, and to become valid and binding instruments upon certain contingencies, and such additional bonds are so issued and deposited, *held*, that both the contract and the additional bonds are void.

2. ——— *Void Under Other Statutes.* And for reasons given in the opinion, *held*, that such contract and additional bonds are also void under other statutes.

3. VOID CONTRACT—*Part Performance*—*Party Benefited, Doing Equity to Other Party.* Where a contract is entered into in good faith between a corporation, public or private, and an individual person, and the contract is void in whole or in part, because of a want of power on the part of the corporation to make it or to enter into it in the manner in which the corporation enters into it, but the contract is not immoral, inequitable, or unjust, and the contract is performed in whole or in part by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent rendered in return, and these benefits are such as one party may lawfully render and the other party lawfully receive, the party receiving such benefits will be required to do equity toward the other party, by either rescinding the contract and placing the other party *in statu quo*, or by accounting to the other party for all benefits received for which no equivalent has been rendered in return; and all this should be done as nearly in accordance with the terms of the contract as the law and equity will permit.

4. CITY *to Account for Benefits Received.* And *held*, under the circumstances of this case, that although the contract and the additional bonds in this case are void, the city must account to the holders of the original bonded indebtedness for all benefits received by it for which it has rendered no equivalent, and this as nearly in accordance with the contract as the law and equity will permit.

*Error from Atchison District Court.*

THIS was an action brought in the district court of Atchison county on March 26, 1883, by the city of Atchison against William Hetherington and Webster W. Hetherington, partners as Wm. Hetherington & Co., to have certain bonds of the city of Atchison, twenty in number and each for $500, amounting in the aggregate to $10,000, canceled and declared null and void for illegality in their execution, and for want of consideration. On December 12, 1883, the defendants answered, setting forth the circumstances under which the bonds were placed in their hands, that they had no interest in the bonds except as trustees, that J. P. Brown and Frank Bier, partners as Brown & Bier, were the real owners of the bonds, and that there could not be a complete determination of the questions involved in the controversy without Brown & Bier being made parties, and asking that they should be so made parties. Also, Brown & Bier appeared and asked to be made parties defendant, which was granted; and on January 8, 1884, they filed their answer and cross-petition, setting forth in substance among other things, the following: On August 23, 1879, Brown & Bier owned bonds of the city of Atchison amounting to $49,943.95, which by way of compromise they permitted to be re-funded by the city of Atchison at the rate of sixty cents on the dollar. At the same time and as a part of the same transaction, they, with the city of Atchison, entered into a certain contract in pursuance of which the bonds in controversy were issued and placed in the hands of Wm. Hetherington & Co., as trustees, and it is alleged that the city of Atchison has violated such contract in various particulars, whereby it has become liable to Brown & Bier; and therefore they prayed that judgment may be rendered against the city of Atchison, *first*, that its petition against Wm. Hetherington & Co. be dismissed; *second*, that the city of Atchison be decreed to specifically perform the aforesaid contract, and to issue further bonds to Brown & Bier to the amount of

$19,977.58, with 7 per cent. interest from July 1, 1879, or that judgment be rendered in favor of Brown & Bier and against the city of Atchison for that amount; *third*, or if such judgment cannot be rendered, then that judgment be rendered in favor of Brown & Bier and against the city of Atchison for the sum of $70,000, or that the city return to Brown & Bier the original bonds and coupons delivered by them to the city in the same condition in which they were when delivered; and for other relief. Full replies were filed by the plaintiff to the answers of the defendants. The case was afterward tried before the court without a jury. And the court made special findings and conclusions of fact and law, and on May 29, 1886, rendered judgment in favor of the plaintiff and against the defendants that the bonds in controversy be delivered up and canceled and held for naught, and that Brown & Bier be forever enjoined from setting up or claiming any right or interest therein or thereto. To reverse this judgment, *Brown & Bier*, as plaintiffs in error, bring the case to this court, making *The City of Atchison* the defendant in error.

The contract between the city of Atchison and Brown & Bier, as shown by the pleadings and the findings of the court, reads as follows:

"Whereas, the partnership firm of Brown & Bier now hold general funding bonds and judgments on coupons from the general funding bonds of the city of Atchison, Kansas, amounting in the aggregate to the sum of $49,943.95; and whereas, the city of Atchison is indebted to divers and sundry other parties who now hold the bonds of the said city of Atchison; and whereas, the said city of Atchison has offered to compromise the said bonds and judgments now held and owned by the said Brown & Bier upon a basis of fifty cents and 10 per cent. commission on the dollar of said amount of $49,943.95, by issuing to said Brown & Bier re-funding bonds of the said city of Atchison due in twenty years from July 1st, 1878, with interest at 7 per cent. per annum, payable semi-annually; and whereas, the said Brown & Bier have accepted the said proposition of the said city of Atchison to compromise the said amount of bonds and judgments by them held and owned

at sixty cents on the dollar, as aforesaid, in re-funding bonds of the city of Atchison upon the following terms and conditions, to wit: *First*—The said city of Atchison is to deliver to said Brown & Bier re-funding bonds of the city of Atchison in an amount equal to 60 per cent. as aforesaid of the said sum of $49,943.95, the receipt of which said refunding bonds is hereby acknowledged. *Second*—If the said city of Atchison shall at any time within five years from this date compromise any of its bonded indebtedness now outstanding, by issuing re-funding bonds of said city in any amount in excess of sixty cents, as aforesaid, on the dollar on any bond compromised, or shall levy or cause to be levied a tax to pay any amount due, in excess of 60 per cent. thereof, then and in that event the said city of Atchison is to issue and deliver to Brown & Bier, re-funding bonds of the city of Atchison in an amount equal to what such per cent. in excess of 60 per cent. on any bonds so compromised would amount to on the sum of $49,943.95, and interest on such excess at 7 per cent. from July 1, 1879.

"Now, therefore, for the purpose of fulfilling the terms and conditions of this agreement obligatory upon the said city of Atchison, the said city of Atchison has caused to be issued and properly executed ten thousand dollars of the re-funding bonds of said city, a schedule of which is hereto attached as part hereof; and by agreement of the parties hereto, the said city of Atchison has deposited said ten thousand dollars of refunding bonds of said city so executed and issued as aforesaid, with Wm. Hetherington & Co., of the city of Atchison, in escrow, there to remain for and during the period of five years from date thereof, unless sooner delivered to said Brown & Bier under the terms of this agreement; that is to say, that if the said city of Atchison shall at any time before the expiration of five years from date hereof, compromise any of its outstanding bonded indebtedness at any sum in excess of sixty cents as aforesaid on the dollar, or shall at any time within such period levy or cause to be levied a tax to pay any bonds, coupons or judgments against the city on any of its outstanding bonds or coupons in excess of 60 per cent. as aforesaid of the amount due thereon, then and in that event the said Wm. Hetherington & Co. are authorized to deliver to the said Brown & Bier out of the said bonds so deposited with them under this agreement, such an amount thereof of the face value equal to what such per cent. in excess of 60 per cent. would amount to on the sum of $49,943.95, and interest on such ex-

cess at 7 per cent. from July 1st, 1879. And it is further agreed, that the condition upon which said Hetherington & Co. shall deliver said bonds to Brown & Bier under this contract, shall be the official records of said city of Atchison, if said city shall keep a record of each compromise of said bonds. Should the city of Atchison levy tax to pay interest on bonds, judgments and coupons, then the record of such levy shall be the evidence. Said Hetherington & Co. shall give written notice to the mayor of said city at least ten days before any bonds shall be delivered under this agreement.

"This contract shall not remain in force beyond the expiration of five years from date hereof, at which time all such bonds deposited with said Wm. Hetherington & Co., under this agreement, not used under the terms hereof, shall be surrendered to said city for cancellation. It is further mutually agreed between the parties hereto, that said Brown & Bier and the said city of Atchison shall act in good faith toward the other as to the subject-matter hereof, and the said Brown & Bier agree that they will not in any way interfere with the said city of Atchison in its attempt to compromise its outstanding indebtedness, and further agree that they will faithfully labor to bring about and effect a compromise of the indebtedness of said city, at a sum not to exceed sixty cents as aforesaid on the dollar, at the earliest practical period, and should they fail to do so, they forfeit all right under this contract, and said bonds shall be returned to said city of Atchison upon demand therefor; but the said Brown & Bier do not obligate themselves to effect any settlement of said indebtedness.

"In witness whereof, the said city of Atchison, by its mayor, hereto fully authorized by bond committee, has caused these presents to be executed, and caused the same to be attested by the corporal [corporate] seal of said city, and said Brown & Bier have hereunto affixed their signatures this 23d day of August, 1879.

[Seal.]          THE CITY OF ATCHISON, KANSAS,
                        Per JOHN C. TOMLINSON, *Mayor.*
           BROWN & BIER."

Each of the bonds deposited with Wm. Hetherington & Co., except as to number, and each of the re-funding bonds, except as to number and amount, as is shown by the pleadings and the findings of the court, reads as follows:

Brown v. City of Atchison.

No. 114.    UNITED STATES OF AMERICA.          $500.

STATE OF KANSAS.    [ State Seal.]    COUNTY OF ATCHISON.

CITY OF ATCHISON.—RE-FUNDING BOND.

Know all men by these presents, that the city of Atchison, (a city of the second class,) in the county of Atchison and state of Kansas, for value received, hereby promises to pay to the bearer, on July 1st, 1898, at the office of the treasurer of said city, the sum of five hundred dollars, with interest thereon from date until paid, at the rate of 7 per cent. per annum, payable semi-annually, on January 1st and July 1st of each year, at the office of the treasurer of said city, on presentation of the proper coupons hereto attached, and at the times therein mentioned, respectively.    This is one of a series of bonds of like tenor and date, of the denominations of $50, $100, $500 and $1,000, respectively, amounting in the aggregate to three hundred and thirty-three thousand dollars ($333,000), issued for the purpose of re-funding the entire bonded indebtedness of said city of Atchison, under and by virtue of the laws of the state of Kansas, and the provisions of an act of the legislature entitled "An act to enable cities of the second and third classes to re-fund their indebtedness," approved March 3, 1877, being chapter 89 of the acts of the legislature of Kansas for 1877, the mayor and council of said city of Atchison having duly determined at what per cent. said indebtedness should be re-funded, and said issue of bonds being made in every respect in conformity with law.    Executed and issued at said city of Atchison, in Atchison county, Kansas, by order of the mayor and council of said city, and signed by the mayor and clerk, and attested with the seal of said city, this first day of July, 1878.

(Seal of the city of Atchison.)

(Signed)    JOHN C. TOMLINSON,
                    *Mayor of the City of Atchison.*
(Signed)    THOS. J. WHITE,
                    *Clerk of the City of Atchison.*

Coupons, substantially the same in form, for the semi-annual interest payable on said bonds, were attached to each of the bonds, to those deposited with Wm. Hetherington & Co. as well as to those delivered to Brown & Bier.

*B. P. Waggener,* for plaintiffs in error.

*W. R. Smith,* city attorney, and *S. Heath,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On August 23, 1879, Brown & Bier owned bonds of the city of Atchison, which was then a city of the second class, amounting in the aggregate, principal and interest, to the sum of $49,943.95, which by an agreement with the city were re-funded at the rate of sixty cents on the dollar, Brown & Bier receiving in new or re-funding bonds $29,950, and in money $16.37. Also, as a part of the same transaction, other new or re-funding bonds to the amount of $10,000 were issued by the city of Atchison and deposited with Wm. Hetherington & Co. as trustees, to be held by them in escrow for a time not exceeding five years, subject upon certain conditions and contingencies set forth in a written contract made between the parties at the same time and as a part of the same transaction, to be finally delivered in whole or in part to Brown & Bier, or to be returned in whole or in part to the city of Atchison, such delivery or return to depend entirely upon the conditions and contingencies set forth in said contract. All these new or re-funding bonds, the ones deposited with Wm. Hetherington & Co. as well as the others, as is shown upon their face, and as is also shown by the findings of the court below, were issued under chapter 89 of the laws of 1877. That chapter, so far as it is necessary to quote it, reads as follows:

"SECTION 1. Every city of the second and third class is hereby authorized to take up and re-fund all its matured and maturing bonds issued on account of any subscription to the capital stock of any railroad company, or for any other purpose, including all accrued interest thereon and judgments rendered on any such bonds and interest.

"SEC. 2. The bonds issued under this act shall be at the rate of not exceeding sixty cents for each dollar of said indebtedness, and shall bear seven per cent. interest per annum, payable semi-annually, on the first day of January and July of each year, with proper coupons attached for such interest; be signed by the mayor and clerk, and attested with the seal of the city. . . . Said bonds shall be due and payable twenty years after date thereof."

The first question presented in this case is, whether the aforesaid written contract is valid or not. Is it valid under the act under which the new bonds were issued? In our opinion it is not. Under that act a city is not

1. City bonds—re-funding—contract and additional bonds void.

authorized to issue re-funding bonds at a rate greater than sixty cents on the dollar. Under that act it would seem that all re-funding bonds issued in excess of sixty cents on the dollar, and all contracts therefor, with or without reference to any conditions or contingencies, would be void. It would therefore seem that all that part of the aforesaid contract providing that bonds might be issued or delivered in excess of sixty cents on the dollar is void; and the bonds themselves so issued are also void. And further, the natural tendency of the aforesaid contract would be to prevent the city from compromising or re-funding any of its remaining bonded indebtedness at a rate exceeding sixty cents on the dollar, notwithstanding the fact that chapter 50 of the laws of 1879, which was then in force, provides that any city may compromise and re-fund any of its indebtedness at an amount greater or less than sixty cents on the dollar, and in an amount up to the actual amount of the indebtedness. If this contract is valid, then its tendency would be to virtually repeal the foregoing statute, so far as the city of Atchison is concerned. (See also § 36, of the second-class-city act, as amended by § 1, ch. 67, Laws of 1873.) Also, the tendency of the contract would be to prevent the city of Atchison from levying a tax to pay any amount due on its outstanding bonded indebtedness in excess of sixty per cent. thereof. This is also in contravention of law, and against public policy; for every holder of every one of the city's bonds had the unimpeachable right to require that the city should levy an amount of tax sufficient to pay the entire amount of his bond, and no bondholder was required by any law to compromise with reference to his bond or bonds, or to take anything less for his bond or bonds than the full face value thereof with all the interest thereon. It was always purely discretionary with every bondholder as to whether he would accept any proffered compro-

mise or not, or any proffered privilege of re-funding his bond or bonds or not, or whether he would require payment thereof according to the very terms thereof. And it will be presumed that the bondholders would always consult their own best interests in all transactions of this kind.

But it is claimed that if the contract and bonds would be void under chapter 89 of the laws of 1877, still that they are valid under chapter 50 of the laws of 1879. To this it may be answered that they were not made or issued under that act, but were made and issued under the act of 1877, but in violation of some of the provisions of both acts. There are many differences existing between the two acts. The act of 1877 provides for re-funding bonds by issuing others in their place at a rate not to exceed sixty cents on the dollar, due in twenty years and drawing interest at the rate of 7 per cent. per annum. The act of 1879 provides for compromising and re-funding any kind of indebtedness by issuing re-funding bonds at any rate not exceeding the actual amount of the indebtedness, due at any time agreed upon not exceeding thirty years, and drawing interest at any rate not to exceed 6 per cent. per annum, and the re-funding bonds must contain a recital that they were issued under the act of 1879; and when they are issued the transaction is closed; and if they are issued at a rate not exceeding 65 per cent. of the indebtedness, the city in that case shall never increase its indebtedness beyond the amount of the re-funding bonds until they are paid or liquidated, and any indebtedness created over and above the "amount of the re-funding bonds shall be absolutely null and void." It will be seen that there are many advantages and many disadvantages in re-funding under one act or under the other, and a great room for choice. Brown & Bier, however, chose to re-fund under the act of 1877, and in doing so they failed in several particulars to comply with the provisions of the act of 1879. They took re-funding bonds drawing interest at the rate of 7 per cent. per annum, when the act of 1879 says the interest shall not exceed 6 per cent. per annum. The act of 1879 provides that the bonds "shall contain a re-

cital that they are issued under this act." The bonds in the present case contain a recital that they were issued under the act of 1877. The act of 1879 contemplates that when the bonds are issued the transaction shall be closed, and that the city shall not further increase its indebtedness where the original indebtedness was re-funded at 65 per cent. or less; but the transaction in this case was upon the theory that the transaction was not closed when the bonds were issued, and that the city should still further increase its indebtedness by delivering upon certain contingencies $10,000 more in bonds to the original holders of the indebtedness. Under § 5 of this act of 1879, any such increase is void.

But it is urged by the plaintiffs in error that even if the contract and the bonds in controversy would be void under the aforesaid statutes of 1877 and 1879, still that they are valid under § 36 of the act relating to cities of the second class as amended in 1873. (Laws of 1873, ch. 67, § 1.) We think this is also a mistake. That section provides, among other things, as follows:

"The [city] *council* may appropriate money and provide for the payment of the debts and expenses of the city, and when necessary may provide for issuing bonds for the purpose of funding any and all indebtedness now existing or hereafter created," etc.

The city council of Atchison, however, never took any action under this section. It never even attempted to "provide for issuing bonds" under this section. But it expressly provided by an ordinance passed April 17, 1878, for re-funding bonds under chapter 89 of the laws of 1877, and under no other act, and the entire transaction in the present case was had under that ordinance and under the act of 1877, and under no other act or ordinance relating to the funding or re-funding of indebtedness. We think the aforesaid contract and the $10,000 in bonds issued thereunder and deposited with Wm. Hetherington & Co. are void under § 36 of the second-class-city act, as well as under the other acts of the legislature.

2. Contract, void under other statutes.

But it is further claimed that even if the said contract is void under the statutes, and even if the bonds for $10,000 issued under it and deposited with Wm. Hetherington & Co. are void, still that in this action, and upon general principles of law and equity, Brown & Bier are not utterly destitute of all right to relief. It is claimed that under the circumstances of this case, and upon general principles of law and equity, Brown & Bier are entitled to full and complete relief under their contract. It is urged that as this is an action in the nature of a suit in equity; as the entire transaction between Brown & Bier and the officers of the city of Atchison was in good faith and found to be in good faith by the court below; as Brown & Bier parted with and delivered to the city of Atchison, good and valid bonds of the city, amounting, in the aggregate, principal and interest, to $49,943.95, and received in return therefor in bonds and money, only $29,966.37, thereby delivering to the city of Atchison $19,977.58 more than they received in return from the city, and all this upon the honest belief and the faith thereof that the aforesaid contract was valid and would be scrupulously kept and fulfilled by the city, and that they, Brown & Bier, would be treated as favorably as the most favored person or persons who might afterward return to the city, city bonds for re-funding; as the contract has been wholly fulfilled and executed on the part of Brown & Bier; as there is nothing unjust or immoral in the contract, and as the city has received from Brown & Bier $19,977.58 in good and valid bonds, for which it has paid no equivalent, the city is now bound to fulfill its contract, or at least before it can obtain equitable relief by having the bonds in controversy delivered up to it to be canceled and held for naught, it must do full and complete equity in the premises as toward Brown & Bier. It is claimed that before the city of Atchison can have the bonds in controversy set aside or canceled, it must either place Brown & Bier in the same situation and condition occupied and sustained by them before the aforesaid transaction was had at all, by returning to them their original bonds in the same condition in which

they were when Brown & Bier delivered them to the city, or
that the city must otherwise do equity by placing Brown &
Bier in as favorable a situation as they expected to be placed
in by virtue of the provisions and conditions of the aforesaid
contract. After the aforesaid contract was made, and within
less than five years thereafter, the city of Atchison compromised
and re-funded about $150,000 of its bonded indebtedness which
had existed and was outstanding prior to the time when said
contract was executed, by issuing new and re-funding bonds
for the full face value of the old bonds which it re-funded,
the new bonds to be due and payable in thirty years and to
draw interest payable semi-annually at the rate of 4 per cent.
per annum. These new bonds and the issuing thereof were
legal and valid at the time of the issuing thereof and such
bonds might have been legally issued at any time from the
time when the aforesaid contract was executed up to the time
when they were in fact issued, and that kind of bonds, that
is, four-per-cent. re-funding bonds, running thirty years for the
full amount of the old indebtedness, might legally have been
issued to Brown & Bier at the time when said contract was
executed instead of the seven-per-cent. re-funding bonds, run-
ning twenty years, for sixty per cent. of the old indebtedness,
which were actually issued to them. Now it would seem that
in equity and within the scope and spirit of the aforesaid con-
tract, Brown & Bier ought to be placed in as favorable a sit-
uation or condition as those whose bonds were afterward legally
re-funded at their full face value, by the issuance of other bonds
running thirty years and drawing interest at the rate of four
per cent. per annum; and this should be the judgment of the
court, if the rules of law and equity in cases of this kind will
permit. No authorities precisely in point can be found, but
many authorities lend support to the above views. In the
case of *Hitchcock v. City of Galveston,* 96 U. S. 341, 350, 351,
the following language is used:

"In the view which we shall take of the present case, it is,
perhaps, not necessary to inquire whether those cases justify
the court's conclusion, for if it were conceded that the city

had no lawful authority to issue the bonds described in the ordinance and mentioned in the contract, it does not follow that the contract was wholly illegal and void, or that the plaintiffs have no rights under it. They are not suing upon the bonds, and it is not necessary to their success that they should assert the validity of those instruments. It is enough for them that the city council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have done and furnished; that for these things the city promised to pay; and that after having received the benefit of the contract the city has broken it. It matters not that the promise to pay was in a manner not authorized by law. If payments cannot be made in bonds because their issue is *ultra vires*, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. The contract between the parties is in force, so far as it is lawful. . . . Having received benefit at the expense of the other contracting party, it cannot object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform."

In the case of *City of Parkersburg v. Brown*, 106 U. S. 487, 503, the following language is used:

"But, notwithstanding the invalidity of the bonds and of the trust, the O'Briens had a right to reclaim the property and to call on the city to account for it. The enforcement of such right is not in affirmance of the illegal contract, but is in disaffirmance of it, and seeks to prevent the city from retaining the benefit which it has derived from the unlawful act. (2 Com. Cont. 109.) There was no illegality in the mere putting of the property by the O'Briens in the hands of the city. To deny a remedy to reclaim it is to give effect to the illegal contract. The illegality of that contract does not arise from any moral turpitude. The property was transferred under a contract which was merely *malum prohibitum*, and where the city was the principal offender. In such a case the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received."

In the case of *Chapman v. County of Douglas*, 107 U. S.

4—39 KAS.

348, 355, where the county of Douglas, Nebraska, entered into an unauthorized contract for the purchase of a poor-farm, and when the purchaser or his assigns attempted to enforce the collection of the notes executed in payment for the farm, the county resisted payment on the ground that the contract was unauthorized, but the supreme court of the United States held the county liable, and in the opinion of the court used the following language:

"The agreement, as we have assumed, so far as it relates to the time and mode of payment, is void; but the contract for the sale itself has been executed on the part of the vendor by the delivery of the deed, and his title at law has actually passed to the county. As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown."

In the case of *Railroad Co. v. Howard*, 7 Wall. 392, 413, the supreme court of the United States uses the following language:

"Corporations as much as individuals are bound to good faith and fair dealing, and the rule is well settled that they cannot, by their acts, representations, or silence, involve others in onerous engagements and then turn around and disavow their acts and defeat the just expectations which their own conduct has superinduced."

In the case of the *Township of Pine Grove v. Talcott*, 19 Wall. 666, 678, and in the case of *National Bank v. Mathews*, 98 U. S. 621, 629, the supreme court of the United States approvingly refers to the following language used by Mr. Sedgwick in his work on Statutory and Constitutional Law:

"It must be further borne in mind that the invalidity of contracts made in violation of statutes is subject to the equitable exception that, although a corporation, in making a contract, acts in disagreement with its charter, where it is a simple question of capacity or authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agree-

ment cannot be permitted, in an action founded on it, to question its validity.   It would be in the highest degree inequitable and unjust to permit the defendant to repudiate a contract the fruits of which he retains.   And the principle of this exception has been extended to other cases.   So, a person who has borrowed money of a savings institution upon his promissory note, secured by a pledge of bank stock, is not entitled to an injunction to prevent the prosecution of the note, upon the ground that the savings bank was prohibited by its charter from making loans of that description." (Sedg. Stat. Law, 2d ed., 73.)

In the case of *Argenti v. City of San Francisco*, 16 Cal. 255, 282, 283, the following language is used :

"If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial.   If the city obtain other property which does not belong to her, it is her duty to restore it; or if used by her, to render an equivalent to the true owner, from the like general obligation.   In these cases she does not in fact make any promise on the subject, but the law, which always intends justice, implies one; and her liability thus arising is said to be a liability upon an implied contract, and it is no answer to a claim resting upon a contract of this nature, to say that no ordinance has been passed on the subject, or that the liability of the city is void when it exceeds the limitation of $50,000 prescribed by the charter.   The obligation resting upon her is imposed by the general law, and is independent of any ordinance, and the restraining clauses of the charter. It would be indeed a reproach to the law if the city could retain another's property because of the want of an ordinance, or withhold another's money because of her own excessive indebtedness."

In the case of *Pimental v. City of San Francisco*, 21 Cal. 351, 361, 362, the following language is used :

"The city is not exempted from the common obligation to do justice, which binds individuals.   Such obligation rests upon all persons, whether natural or artificial.   If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it from this general obligation.   If she obtain other property which does not belong to

her, it is her duty to restore it, or if used, to render an equivalent therefor, from the like obligation. (*Argenti v. San Francisco,* 16 Cal. 282.) The legal liability springs from the moral duty to make restitution. And we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics; its command always is to do justice."

In the case of *Paul v. City of Kenosha,* 22 Wis. 266, 272, where the plaintiff had purchased certain bonds of the city which were void for want of power to issue them, it was held that he was entitled to recover the amount paid, and the following, among other language, was used by the court:

"The city has had that amount of money and legal scrip for its city bonds, which turn out to be of no value whatever. It seems to fall under the general rule of law, that where a party sells an obligation which turns out to be valueless, and not of such a character as he represents it to be, he is liable to the vendee as upon a failure of consideration. The city bonds, it appears, were void when the agents of the city sold them to the plaintiff. Is it just and equitable that the city retain the money which it has received for its own worthless bonds?"

In the case of *Whitney Arms Co. v. Barlow,* 63 N. Y. 63, 70, it is held as follows:

"The plea of *ultra vires* as a general rule will not prevail, whether interposed for or against a corporation, when it will not advance justice, but on the contrary will accomplish a legal wrong. . . . It is now very well settled that a corporation cannot avail itself of the defense of *ultra vires* when the contract has been, in good faith, fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract. If an action cannot be brought directly upon the agreement, either equity will grant relief or an action in some other form will prevail. The same rule holds *e converso.* If the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation."

In the case of *Memphis &c. Rld. Co. v. Dow,* 19 Fed. Rep. 388, 393, the court says:

"The decided weight of modern authority favors the conclusion that neither party to a transaction *ultra vires*, will be permitted to allege its invalidity while retaining its fruits."

In the case of *Hays v. Coal Co.*, 29 Ohio St. 330, 340, the following language is used:

"The rule seems well established that where a contract has been executed and fully performed, on the part either of the corporation or of the other contracting party, neither will be permitted to insist that the contract and such performance by one party were not within the corporate power of the company."

Also see the case of *Hydraulic Co. v. C. H. & D. Rld. Co.*, same volume, 341. In the case of *Thompson v. Lambert*, 44 Iowa 239, 248, the court says:

"As we understand, the rule *ultra vires* prevails in full force only where the contracts of corporations of this character remain *wholly* executory. . . . This rule prevails even as to public or municipal corporations in analogous cases."

Mr. Morawetz, in his work on Private Corporations, states the rule as follows:

"After a contract entered into by a corporation has been performed by either of the contracting parties, the fact that the making of the contract involved an unauthorized exercise of corporate power on the part of the company, will not constitute a defense to an action brought by the party having performed the contract, to recover compensation for a breach of the contract by the other party." (Mor. Corp., heading to § 689.)

"The general rule is, that if an agreement is legally void and unenforceable by reason of some statutory or common-law prohibition, either party to the agreement who has received anything from the other party and has failed to perform the agreement on his part, must account to the latter for what has been so received. Under these circumstances, the courts will grant relief irrespective of the invalid agreement, unless it involves some positive immorality, or there are other reasons of public policy why the courts should refuse to grant any relief in the case." (Mor. Corp., § 721.)

Mr. Kerr in his work on Fraud and Mistake, 398, uses the following language:

"If a man, through misapprehension or mistake of the law, parts with or gives up a private right of property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief, if under the general circumstances of the case it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit or advantage so acquired."

See also 2 Dill. Mun. Corp., 3d ed., §§ 938, 959, *et seq.* See also the following cases: *Maduska v. Thomas*, 6 Kas. 153; *Bradley v. Ballard*, 55 Ill. 413; *Parish v. Wheeler*, 22 N. Y. 494; *Packet Co. v. Shaw*, 37 Wis. 655, 661; *Morville v. American Tract Society*, 123 Mass. 129, 137; *Clark v. Saline County*, 9 Neb. 516, 523; *Town of Searcy v. Yarnell*, 14 Am. & Eng. Corp. Cases, 523; *State Board of Agriculture v. Street Rly. Co.*, 47 Ind. 407. Other authorities of a similar character might be cited, but we think the foregoing are sufficient. From the authorities we think the following principle may be educed : Where a contract is entered into in good faith between a corporation, public or private, and an individual person, and the contract is void in whole or in part, because of a want of power on the part of the corporation to make it or to enter into it in the manner in which the corporation enters into it, but the contract is not immoral, inequitable, or unjust, and the contract is performed in whole or in part by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent rendered in return, and these benefits are such as one party may lawfully render and the other party lawfully receive, the party receiving such benefits will be required to do equity toward the other party, by either rescinding the contract and placing the other party *in statu quo*, or by accounting to the other party for all benefits received for which no equivalent has been rendered in return ; and all this should be done as nearly in accordance with the terms of the contract as the law and equity will permit. It must be remembered that in this case the city had the power to re-fund its outstanding bonded indebtedness

*3. Void contract —part performance— party benefited, doing equity to other party.*

in three ways: (1) By issuing, as it did to Brown & Bier, new seven-per-cent. bonds, running twenty years, for an amount not exceeding sixty per cent. of the old bonded indebtedness; (2) by issuing new bonds, drawing interest not to exceed six per cent. per annum, running not to exceed thirty years, and for an amount not exceeding the face value of the old bonded indebtedness; (3) by issuing new bonds drawing interest not to exceed ten per cent. per annum, running not less than ten nor more than twenty years, and for the full face value of the old indebtedness. Hence it will be seen that the city had the power to re-fund bonds on better terms than those terms on which it re-funded Brown & Bier's bonds, and hence in this sense the contract entered into between the city and Brown & Bier was not illegal nor against public policy. Under § 36 of the second-class-city act, Brown & Bier might lawfully have had their bonds re-funded at their full face value and drawing interest at the rate of ten per cent. per annum if the city had chosen to so re-fund them. But the city did not so choose. It, through its council, never even gave its officers authority to so re-fund them or to so re-fund any other bonds. Now while the aforesaid contract and the bonds issued under it and deposited with Wm. Hetherington & Co. are void, yet, as the city has received a benefit under such contract, and a benefit which it could legally receive, and a benefit which it would not have received except for such contract, and a benefit for which it has rendered no equivalent, we think it should be required to account to Brown & Bier for the same; and probably the only relief which Brown & Bier now obtain under the circumstances of this case is a judgment for the difference in value between the re-funding bonds which were actually issued to and received by them, and an amount of four-per-cent. bonds running thirty years, equal to the full face value of the bonds which they surrendered to the city to be re-funded. And in such a case the bonds deposited with Wm. Hetherington & Co. should be returned to the city to be canceled.

4. City to account for benefits received.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

JOHNSTON, J., concurring.

HORTON, C. J., taking no part in the decision.