No. 20,273.

JOHN RITCHIE & SONS, a Copartnership, etc., *Appellants*, v. THE CITY OF WICHITA, *Appellee*.

SYLLABUS BY THE COURT.

1. PAVING—*Contract Let—Defective Petition—City Enjoined—Neither Loss of Profits Nor Damages Recoverable by Contractor*. When a city upon an insufficient petition of abutting property owners lets a contract to pave a street, and the city is later enjoined in a tax-payers' suit under section 265 of the civil code from levying special taxes and assessments to pay for the improvement, and the person who contracted to lay the paving had notice of the pendency of the tax-payers' suit before he commenced work, although he was not a party to the suit and no temporary injunction was issued, the contractor can not recover from the city on the contract, nor for loss of profits, nor for damages.

2. SAME—*City Liable for Work Actually Done by Contractor*. When the proper city officials make a finding that a petition to pave a street has been signed by a sufficient number of abutting property owners and adopts a resolution to pave the street and lets a contract pursuant thereto, it is estopped to deny the sufficiency of the petition under which it let the contract, in an action for compensation for the work actually done under it, following *Sleeper v. Bullen & Dustin, et al.*, 6 Kan. 300, 307.

3. SAME—Where a contract between a city and a paving contractor is illegal only because of irregularities in the proceedings leading up to the letting of the paving contract, and the contract is not tinctured with moral turpitude, and there was no want of authority to let the contract if the preliminary proceedings had been strictly regular, the city is liable to the contractor for the work actually done under direction of the proper city officers, when that work is adopted and used by the city (*Brown v. City of Atchison*, 39 Kan. 37, 17 Pac. 465), and it is liable also for that portion of the work actually done which was only discarded and unused by the city because it afterwards changed the specifications and paved the street with another kind of paving.

4. SAME—*Statute Requiring Presentation of Claim—Not Applicable*. Section 1460 of the General Statutes of 1915, which requires certain claims to be presented to the city within four months, has no application to such a situation as that outlined in the three first paragraphs of this syllabus.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed February 10, 1917. Reversed.

*W. D. Jochems, Kos Harris,* and *V. Harris,* all of Wichita, for the appellants.

*James A. Conly,* and *Earl Blake,* both of Wichita, for the appellee; *J. A. Brubacher, W. A. Ayres,* and *C. A. McCorkle,* all of Wichita, of counsel.

The opinion of the court was delivered by

DAWSON, J.: On February 27, 1911, the city of Wichita awarded a contract to the plaintiffs for the paving of a street with vitrified brick. The contract provided that the plaintiffs should furnish the materials and do certain grading and excavation work. The improvement was to be under the supervision of the city engineer, and payments for eighty-five per cent of the work done were to be made every thirty days upon the engineer's estimates. Work was to begin within thirty days and completed by July 1 of that year. Another contract between the same parties, let at the same time for some paving on another part of the same street, was to the same general effect, but was to be completed by June 1. Neither contract contained any stipulation as to penalties or liquidated damages for delay in the completion of the work, but in the first-mentioned contract it was provided:

"That if said second parties are delayed upon said improvement upon the request of said first party, by injunction suits or any unforseen contingencies, beyond the control of said second parties, then and in that case the time for the completion of said improvement shall be extended the same length of time as such delay."

The same day that these contracts were awarded to the plaintiffs the city commissioners were served with a summons in a suit filed two days earlier, in which certain taxpayers affected by the proposed paving improvement prayed for an injunction restraining the city and its officials from levying and collecting special taxes on the abutting property to pay for the paving in question, on the ground that the petition under which the city had assumed to act and to let the contracts was not signed by the resident owners of one-half the fronting and abutting property. No temporary restraining order was issued, and that lawsuit proceeded leisurely to final judgment and the permanent injunction prayed for was granted on June 21, 1911. The plaintiffs were not parties to

the taxpayers' suit, but sometime between March 13 and April 1 they learned that it was pending.

On March 13 the plaintiffs furnished a surety bond as required by the contracts awarded them and on the same date the city commissioners executed the contracts. The surety bond cost the plaintiffs $146.76.

Notwithstanding the pendency of the taxpayers' suit for an injunction, challenging the regularity and sufficiency of the proceedings leading up to the letting of the paving contracts, the city commissioner in charge of the department of public improvements, after consulting with the city attorney, directed the plaintiffs to proceed with the paving. To that end they made contracts for cement, sand, brick, etc., and had them brought to Wichita from distant points, and hauled to the place where the work was to be done. They did much excavation down to the grade established by the city engineer. They put in a considerable part of the concrete base. One of the monthly estimates was made by the city engineer as to the work done—$1600; and eighty-five per cent of that amount, $1360, was ordered paid by the city commissioners. It was not paid, however. When the judgment in the taxpayers' suit was rendered on June 21 the city commissioner in charge of the paving construction ordered the plaintiffs to stop all work. They obeyed. Afterwards, on new proceedings, another contract for another kind of paving, called Westrumite, was let to another contractor, on different specifications, which required the filling in of part of plaintiff's excavations, and some of the concrete laid by plaintiffs was laid partly below and partly above the grade specified for the Westrumite paving, and had to be torn out. Under the second letting the street has been paved.

The plaintiffs filed this action to recover on their contracts, for loss of profits, on *quantum meruit,* and for damages. The city answered denying its liability, alleging that the proceedings leading up to the letting of the contracts were void, that the contracts were void, and reciting the history of the taxpayers' suit. The plaintiffs replied, pleading estoppel by the action of the city commissioners in determining that the original petition to pave the street was sufficiently signed by resi-

dent taxpayers affected thereby, by their resolution to pave, their advertising for bids, etc., and—

"That the said city of Wichita, by and through its commissioner of streets and public improvements and by and through its city attorney advised the said plaintiffs herein after the action No. 28745, *Sarah E. Smith et al. v. The City of Wichita et al.*, was commenced, that said action would not amount to anything, that no injunction was prayed for, and that the beginning of the said action did not, in any wise, prevent the city or the plaintiffs from going ahead and completing the work according to contract and said commissioner of streets and said city attorney directed the said plaintiffs to go ahead with the contract. That thereafter the city engineer and other officers of the city set the stakes for the grading and supervised and oversaw the work of the plaintiffs. That by reason of such facts the said city should be estopped from setting up the said action of *Sarah E. Smith et al. v. The City of Wichita et al.*, No. 28745, as a ground for defeating the plaintiff's claim sued on in this action."

Reserving proper objections as to competency, etc., the litigants stipulated as to all the facts, and the trial court gave judgment for plaintiffs for the sum paid by them for the surety bond, $146.76, but nothing more.

Plaintiffs' appeal, contending that when the city commissioners make a finding that a petition is legally sufficient upon which to base their official action in proceeding to call for bids for paving, the contractor was entitled to rely on that finding and make a contract with the city and proceed with his undertaking. It was decided in *Sleeper v. Bullen & Dustin, et al.*, 6 Kan. 300, 307, that where the city had made such a finding as to the sufficiency of a petition of taxpayers to grade a street, and had let a contract thereunder, and the work had been completed, the city was estopped to deny the validity of the contract or its liability to the contractors for the paving. In *H. & S. Rld. Co. v. Comm'rs of Kingman Co.*, 48 Kan. 70, 28 Pac. 1078, the same principle was upheld in mandamus to require the issuing of railroad aid bonds after the railroad was constructed. There the defendants were estopped to deny the sufficiency of the taxpayers' petition after having made an administrative finding that it was sufficient and calling the bond election pursuant thereto. This principle is well established in bond litigation when the rights of innocent holders have attached. (*Finnup v. School District*, 94 Kan. 695, 699, 146 Pac. 349, 148 Pac. 245, and citations.)

But some legitimate field must be left for the operation of section 265 of the civil code and other statutes to the same effect:

"An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same, or to enjoin any public officer, board or body from entering into any contract or doing any act not authorized by law that may result in the creation of any public burden or the levy of any illegal tax, charge, or assessment; and any number of persons whose property is or may be affected by a tax or assessment so levied, or whose burdens as taxpayers may be increased by the threatened unauthorized contract or act, may unite in the petition filed to obtain such injunction."

In *Pollock v. Kansas City*, 87 Kan. 205, 207, 123 Pac. 985, it was held that not only the abutting property owners but any taxpayer could maintain a suit under the code section just quoted. But how fatuous and abortive that preventive of illegal assessments and burdensome taxes is if, notwithstanding an injunction be granted restraining public officers from "doing any act not authorized by law that may result in the creation of any public burden," the same result may be effected by subjecting the city to a judgment on breach of contract, loss of profits, or damages.

Many cases are cited by counsel for appellee which hold that persons contracting with officers of a city do so upon the implied understanding that if the officers have transcended their powers or have exercised their powers without compliance with the preliminary requirements of statute which must precede their official action, that all such contracting parties do so at their peril, and that the doctrines of estoppel and kindred equitable considerations are not pertinent. In *City of Belleville v. Hallowell*, 41 Kan. 192, 21 Pac. 105, it was said:

"While a municipality may be estopped from showing wrongful acts done under a valid law, there is no such thing as a void enactment being made valid by estoppel." (p. 198. *Newman v. City of Emporia*, 32 Kan. 456, 4 Pac. 815.)

The case of *Comm'rs of Wyandotte Co. v. Barker*, 45 Kan. 699, 26 Pac. 591, makes a distinction between the situation of a city and its taxpayers, touching irregularities in proceedings leading up to tax levies, and that of a city and those who have contracted with it. Touching the latter, it recognizes the principle laid down in *Sleeper v. Bullen & Dustin, et al.*, 6 Kan. 300,

while holding that a finding as to the sufficiency of a petition by an official board was of no force in a case between the municipality and its taxpayers.

Still another phase of the question is presented in those cases which involve the registration of municipal bonds, in which, while equitable considerations are not denounced, the extraordinary writ of mandamus will not issue to require their registration if the preliminary proceedings were irregular, since that, in effect, would be to direct the registrar to certify as true and regular what he positively knows to be false and irregular. (*Greely County v. Davis,* ante, p. 1, 160 Pac. 581.)

In *Brown v. City of Atchison,* 39 Kan. 37, 17 Pac. 465, it was held:

"Where a contract is entered into in good faith between a corporation, public or private, and an individual person, and the contract is void in whole or in part, because of a want of power on the part of the corporation to make it or to enter into it in the manner in which the corporation enters into it, but the contract is not immoral, inequitable, or unjust, and the contract is performed in whole or in part by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent rendered in return, and these benefits are such as one party may lawfully render and the other party lawfully receive, the party receiving such benefits will be required to do equity toward the other party, by either rescinding the contract and placing the other party *in statu quo,* or by accounting to the other party for all benefits received for which no equivalent has been rendered in return; and all this should be done as nearly in accordance with the terms of the contract as the law and equity will permit." (Syl. ¶ 3.)

In *City of Ellsworth v. Rossiter,* 46 Kan. 237, 26 Pac. 674, this court quoted approvingly the New York doctrine, in *Fister v. LaRue,* 15 Barb. (N. Y. Supr. Ct.) 323, 324:

" 'It is well settled, at least in this country, that where a person is employed for a corporation, by one assuming to act in its behalf, and goes on and renders the services according to the agreement, with the knowledge of its officers, and without notice that the contract is not recognized as valid and binding, such corporation will be held to have sanctioned and ratified the contract, and be compelled to pay for the services, according to the agreement. Having availed itself of the services and received the benefits, it is bound in conscience to pay, and will not be heard to say that the original agreement was not made by a person legally authorized to contract.' " (p. 241. *Water-Works Co. v. City of Columbus,* 46 Kan. 666, 676, 677, 26 Pac. 1046, 48 Kan. 99, 28 Pac. 1097, and citations on ratification of irregular and void contracts therein; *Bill v. City of Denver,* 29 Fed. 344.)

In *Levy v. Kansas City, Kan.,* 168 Fed. 524, 527, 528, cases including *Brown v. City of Atchison,* supra, are cited on estoppel of municipalities to. deny that their officers had authority to do lawful acts within the scope, but beyond the limits, of the power of the officers.

In *Hovey v. Commissioners of Wyandotte Co.,* 56 Kan. 577, 580, 44 Pac. 17, there is an extended discussion on the liability of municipalities and other public agencies on contracts, *quantum meruit,* etc., where the question only relates to irregularities and not to a total want of power or positive inhibitions of statute. (See, also, Note 27 L. R. A., n. s., 1117.)

The parties stipulated that neither the plaintiffs nor the defendant knew that the petition was insufficiently signed until the judgment was entered in the taxpayers' suit, after much of the plaintiffs' work had been completed.

A majority of the court are of opinion that the case at bar falls within the general principle that where a municipal corporation receives a service, or property, or an improvement, which it retains and uses, common honesty requires that it make payment therefor, where the matter is not tinctured with moral turpitude nor altogether beyond the statutory power of the corporation to acquire or procure. Here there was no moral turpitude. Here there was no want of power, if regularly exercised, to award a paving contract to plaintiffs. The plaintiffs were not parties to the taxpayers' injunction suit. No temporary restraining order was issued thereon. The plaintiffs in the taxpayers' suit did not exercise a high degree of diligence, since they let the work proceed when a temporary restraining order to be had for the asking would have brought it summarily to a stop. (*Meistrell v. Ellis County,* 76 Kan. 319, 91 Pac. 65.) The plaintiffs were ordered to proceed with the paving notwithstanding the pendency of the taxpayers' suit. If they failed to proceed they were or might be liable to the city for delay. Shall it be said that the pendency of the taxpayers' suit left the plaintiffs dangling in the air—at peril if they proceeded, at peril if they failed to proceed? There is no reason why the city should not pay for the work actually performed by plaintiffs and used by the city. This principle is well supported by the authorities. In *Long v. Lemoyne Boro., Appellant,* 222 Pa. St. 311, it was said:

"Municipal repudiation of honest indebtedness which the municipality

intended to contract and could have lawfully contracted, is no more to be tolerated than individual repudiation of honest indebtedness merely because it was not incurred in pursuance of a duly executed express contract, unless the municipal charter or the statutes prohibit the munici-pality from incurring any liability by implication." (p. 318.)

There is, however, an additional complication in this case. When the city let the new contract to another contractor the new specifications called for another kind of paving, which necessitated changes in the grade, filling in of certain excavations made by plaintiffs, and requiring the removal of the concrete base laid by plaintiffs. The result was the practical destruction of most of the work done by plaintiffs. That work was done according to the city's specifications. There was no legal infirmity in them. The defect lay in the original petition for the paving. Even that was cured by the later petition under which the paving was actually laid. It was wrong to destroy the work done by the plaintiffs. It is not intimated that the plaintiffs' work was defective, and if the defendant would be liable for so much of plaintiffs' work as it used it would hardly do to say that it may change its mind as to the specifications and destroy the work done and thus escape liability. If the major proposition is sound, and a majority of the court decides that it is, it follows that the city is not only liable for the work done which the city actually adopted and used, but that it is also liable for the work done which was up to the standard of specifications and which was destroyed for no other reason than that the city changed its specifications and determined to lay another kind of paving.

But we can give no countenance to plaintiffs' claims under their contracts, nor for loss of profits, nor for expenses in bringing the materials to the place of work, nor for damages. It is only by a somewhat vigorous interposition of equitable principles that any relief whatever can be accorded in a situation like the case at bar. Plaintiffs are entitled to recover for the work which they actually did according to the specifications, no more. We do not understand the theory upon which the plaintiffs recovered the price of their surety bond, but since no cross-appeal is filed we will not rule on it.

We hold that the statute requiring certain claims to be filed against the city within four months (Gen. Stat. 1915, § 1460) has no application to cases like the one before us.

The State v. Gas Co.

. The judgment is reversed and the cause remanded with in- . structions to ascertain the value of the excavations, grading, concrete laying, etc., actually done by the plaintiffs on the street in accordance with the specifications furnished to the plaintiffs, without deducting therefrom what was destroyed or rendered useless when the city afterwards determined to change the specifications to use Westramite instead of vitrified brick, and to render judgment for the plaintiffs in accordance therewith.

JOHNSTON, C. J., dissents.