No. 33,257

R. A. Patterson, John Lloyd, J. W. Bear and Mary Kloehr, *Appellants*, v. The Board of County Commissioners of the County of Montgomery, Guy Smith as County Clerk, Ike Graves as County Treasurer, of Montgomery County, Mamie Webber, and Common School District No. 48 of Montgomery County, *Appellees.*

(66 P. 2d 400)

Opinion filed April 10, 1937.

*Walter S. Keith,* of Coffeyville, *Chester Stevens* and *W. D. Kimble,* both of Independence, for the appellants.

*Clement H. Hall,* county attorney, *John Bertenshaw, Kirke C. Veeder,* both of Independence, and *Frank W. Liebert,* of Coffeyville, for the appellees.

The opinion of the court was delivered by

Allen, J.: This was an action to enjoin the collection of a tax in a school district and to set aside a judgment.

The amended petition of plaintiff alleges:

"That the district school board No. 48 aforesaid is composed of R. A. Patterson, clerk, Alma Johnson, treasurer, and Roy Marshall, director; that the school term for this school is opened on or about the first Monday in September each year and ends in May.

"That for the year 1934-'35 for school purposes school district No. 48 received in taxes the sum of $754.01, for this notwithstanding the said Mamie Webber as school teacher was to be paid the sum of $880 for the school year as teacher, well knowing that she was promised a sum of money in excess of the amount received from the county to carry on the school; that the sup-

posed contract that Mamie Webber pretends to have with the school board was made without calling a meeting and no official nor deliberative action by the board was ever taken thereon; that no contract of any kind with Mamie Webber was ever filed with the clerk of said Bates school; that on May 13, 1935, Mamie Webber as plaintiff sued the school district No. 48 for $220 and interest at 6 percent; that she obtained a judgment on May 22, 1935, for $220 and 6 percent and $5.50 as costs against the school district No. 48; that the action was started in justice court, before S. P. Miles, as justice of the peace in Independence, Kan.; that no summons was served on the director, although he was in the county at the time; that members of the board, except the treasurer, did not know of the suit nor have an opportunity to defend it; the voters and electors in said district did not know of the suit until ten days after judgment was rendered against the school district; that the judgment was for an amount in excess of what the board had on hand with which to have paid the said teacher; the judgment is void as were the promises to pay her as teacher in excess of the amount of money lawfully set aside for that purpose; that the summons of the justice court aforesaid was not legally served on the board of school district No. 48, aforesaid, for that it was not served on the director of said board; that the school board of school district No. 48 has wrongfully and improvidently placed this judgment on the tax rolls so that it is a lien on the property of the taxpayers in said school district; that the judgment is void and contrary to law and has no legal force and is wrongfully on the tax rolls and is wrongfully a lien on the property of these and other electors and taxpayers in this school district, because the pretended debt sued and merged in the judgment was an illegal transaction and the debt was in excess of the lawful levy and lawful budget; that a levy was made by school district No. 48 on May 31, 1935, at a school board meeting, of $30 per pupil, or $1,025, but the county clerk has only allowed $990, which is an excessive tax, and burdens with an excessive and illegal tax the property of these plaintiffs and others, because no notice was given the plaintiffs here in time for them to cause a defeat of the levy; that the levy was capriciously and arbitrarily made, because no readable notice of the proposed budget was posted and the part that referred to this judgment was on the reverse side of the notice and not to be seen nor read by these plaintiffs and others, and further, the school board never informed the legal voters of the school district aforesaid that the teacher's salary was in excess of the budget, nor explained to the voters the situation so that they might have voted understandingly on the proposition of making this levy, but the said members of the board flagrantly violated their duties in connection with the judgment as well as with the levy; that levy of $30 per pupil, instead of mills, or as the notice read of 7½ mills, was not carried by a three-fourths majority of the legal voters in the said school district and the levy is void, illegal, unfair and excessive and ought to be reduced as equity may deem proper, and the defendant should be enjoined from collecting said tax; that whatever interest the defendant, Mamie Webber, may have in the illegal and void judgment should be asserted by her, but the plaintiffs claim that the judgment is void as aforesaid.

"Wherefore, plaintiffs pray that the collection of the tax be enjoined until the court may determine the amount it should be reduced, and the plaintiffs

ask that the judgment herein mentioned be stricken from the budget and from the levy and not allowed.

"That the county clerk, Guy Smith, and the county treasurer, Ike Graves, and the board of county commissioners of Montgomery county, Kansas, be enjoined from the further collection or attempt to collect the tax represented by the levy mentioned here until the court makes a finding as to the amount the tax should be reduced, and for such other and further relief as may be proper."

The answer of the board of county commissioners and of the county clerk and county treasurer states:

"That the district board of district No. 48 on September 11, 1935, certified in writing to the county clerk a judgment in favor of Mamie Webber against the school district, which was unpaid, together with a certified copy of the minutes of the annual meeting held May 31, 1935, showing that 22 of the electors voted for and four of the electors of the district voted against paying the judgment, and thereafter a tax was levied to pay said judgment, which the defendants aver is valid, final and unpaid."

They further allege one of the plaintiffs is not a taxpayer, and as two others have paid without protest the tax they seek to enjoin, they are estopped to bring the action. That the plaintiff, Patterson, was clerk of the school district and ratified and approved the alleged illegal teaching contract; that he attended the annual meeting which voted to pay the judgment and that he is estopped from bringing the action. Defendants admit that Patterson paid $4.24 on account of the levy of 1935 which was made to pay the judgment, that the same was paid under protest and that he is the only party legally protesting the payment of the tax.

Answers were filed by Mamie Webber and the school district.

The case was tried by the court without a jury, and judgment was rendered in favor of defendants, and plaintiffs' prayer for equitable relief denied. Plaintiffs' motion for a new trial was overruled, and plaintiffs appeal.

It appears that Mamie Webber taught school in district No. 48 for the school year 1934-'35 at $110 per month for eight months. At the end of six months the funds of the district were exhausted. She taught two additional months, for which she was not paid. She filed suit against the school district in the justice court and recovered judgment for $220, interest and costs.

The first question presented is the capacity of plaintiffs to maintain the action. The petition alleges that the levy of May 31, 1935, was excessive and illegal and burdens the property of plaintiffs and others. Our code of civil procedure (G. S. 1935, 60-1121) provides

that any number of persons whose property is or may be affected by a tax or assessment, or whose burdens as taxpayers may be increased by an illegal levy, may bring an action to enjoin the collection of such illegal tax. Under this statute it is plain the plaintiffs are authorized to bring the action, unless they have been guilty of inequitable conduct which would estop them. We are cited to *Meistrell v. Ellis County,* 76 Kan. 319, 91 Pac. 65. There the taxpayer plaintiffs who had knowledge of the letting of a bridge contract stood silently by for months while the greater part of the work was done and great expense was incurred by the contractor. The court held that the taxpayer plaintiffs were estopped as would be an ordinary suitor under the circumstances. Obviously, that case is not in point here, where the conduct of the plaintiffs has induced no one to change his position.

This is not a case where the regularity of proceeding is challenged as in *Warner v. City of Independence,* 121 Kan. 551, 247 Pac. 871, but to restrain the collection of a tax under an excessive and unlawful levy and to cancel a judgment alleged to be void. We think under the statute plaintiffs are proper parties to prosecute the action.

It is argued that the judgment in the justice court is void, because it violated the cash-basis law.

The first section of that law, G. S. 1935, 10-1101, includes school districts. We quote the pertinent sections of the cash-basis law.

Section 10-1112 reads:

"Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for the governing body of any municipality to create any indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose, or to authorize the issuance of any order, warrant, or check, or other evidence of such indebtedness of such municipality in excess of the funds actually on hand in the treasury of such municipality at the time for such purpose."

Section 10-1113 reads:

"Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for any member of any governing body of any municipality to knowingly vote for or in any manner aid or promote the passage or adoption of any order, motion, ordinance, resolution, legislation or other act of said governing body, creating an indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose, or to knowingly vote for the drawing of any order, warrant or check, or other evidence of such indebtedness on the treasury of said municipality, in payment of any such indebtedness, in excess of the amount of funds actually on hand in the treasury at the time for such purpose."

Section 10-1119 reads:

"Any contract entered into between the governing body of any municipality and any person, which violates the provisions of this act, shall be void, and any order, warrant, check or other evidence of indebtedness drawn on the treasurer of any municipality in violation of the provisions of this act shall be void."

The county clerk's 1934 tax roll disclosed that the total assessed value of the district was $120,178.25, upon which a six-mill levy authorized by statute would raise $721.04.

The records of the school district show that the patrons of the district voted a teacher's salary of $880, and current expenses of $145, making total expenses for the school year of $1,025.

The answer of the school district alleged that at the annual meeting it adopted a levy of $30 per pupil, but admitted that the district board failed to certify the levy to the county clerk. Therefore, the only levy the county clerk could make was the maximum of six mills, no levy being specified in the budget. The deputy county clerk further testified that he did not find any school census of district 48 for either 1934 or 1935.

The only evidence the county clerk had before him was the budget, which failed to disclose any levy and also failed to disclose a vote or any action by the district to provide for a levy of $30 per pupil. Consequently, the only recourse left to the county clerk was to give to the district the maximum provided by the law as above, which he did. This levy raised $721.04, which was insufficient to pay the teacher's salary, without regard to the other expenses.

In *State, ex rel., v. Landor et al.*, 137 Kan. 693, 21 P. 2d 933, this court held that either the six-mill levy may be adopted or the $30-per-pupil levy, but in no event can the six-mill levy be augmented by using the power granted by the proviso as an addition to such six-mill levy.

Since the papers certified by the district to the county clerk in 1934 fail to disclose any levy voted by the taxpayers, either the six-mill or the $30-per-pupil, and fail to disclose the number of pupils daily attending the school the preceding year, the county clerk was only authorized to place upon the tax rolls the maximum levy, to wit: six mills, which would not raise a sufficient sum of money to pay the teacher's salary without regard to the other expenses. Hence, the school district was bound to live within the amount of money it had, to wit, $721.04.

Under these circumstances it is clear that the contract with Mamie Webber violated the express provisions of the cash-basis law and was void. It is therefore unnecessary to examine various other grounds upon which plaintiff claims such contract was void.

It is claimed by defendant that the contract was saved by the exemption of G. S. 1935, 10-1116. It is plain, however, that that section exempts contracts which had been authorized by a vote of the electors of the district prior to the date of the execution of the contract, which was not done in this case. Besides, the exemptions therein mentioned only extend to January 1, 1935.

Was the judgment valid? We pass the question whether an action on a void contract could ripen into a valid judgment, as we think the judgment before the justice of the peace was void because of defective service.

The service of the summons as shown by the return of the constable was upon "Johnson, Treas." The statute, G. S. 1935, 72-1001, provides that the officers of each school district shall be a director, clerk and treasurer, who shall constitute the district board. G. S. 1935, 72-1004, defines the duties of the director, states that he shall be the presiding officer at all district meetings, and recites that, "He shall appear for and in behalf of the district in all suits brought by or against the district." As the action was commenced in a justice court the service of the summons must conform to G. S. 1935, 61-205, which provides that the summons "may be served upon the president, mayor, chairman of the board of directors or trustees, or other chief officer; or, if its chief officer is not found in the county, upon its cashier, secretary, treasurer," etc.

In *Amy v. Watertown*, 130 U. S. 301, the question was whether the city of Watertown was served with process in the suit so as to give the court jurisdiction. The charter required service on the mayor. The court said:

"The question then is reduced to this, whether, in case the mayor has resigned, and there is no presiding officer of the board of street commissioners (a body which seems to take the place of the common council of the city for many purposes), service of process on the city clerk, and on a conspicuous member of the board, is sufficient. If the common law (which is common reason in matters of justice) were permitted to prevail there would be no difficulty. In the absence of any head officer, the court could direct service to be made on such official persons as it might deem sufficient. But when a statute intervenes and displaces the common law, we are brought to a question of words, and are bound to take the words of the statute as

law. The cases are numerous which decide that where a particular method of serving process is pointed out by statute, that method must be followed, and the rule is especially exacting in reference to corporations. (*Kibbe v. Benson*, 17 Wall. 624; *Alexandria v. Fairfax*, 95 U. S. 774; *Settlemeier v. Sullivan*, 97 U. S. 444; *Evans v. Dublin, etc., Railway*, 14 M. & W. 142; *Walton v. Universal Salvage Co.*, 16 M. &. W. 438; *Brydolf v. Wolf, Carpenter & Co.*, 32 Iowa, 509; *Hoen v. Atlantic and Pacific Railway Co.*, 64 Missouri, 561; *Lehigh Valley Ins. Co. v. Fuller*, 81 Penn. St. 398.) The courts of Wisconsin strictly adhere to this rule. (*Congar v. Railroad Co.*, 17 Wisconsin, 477, 485; *City of Watertown v. Robinson*, 59 Wisconsin, 513; *City of Watertown v. Robinson*, 69 Wisconsin, 230.) The two cases last cited related to the charter now under consideration. In the first case, service was made upon the city clerk and upon the chairman of the board of street commissioners, whilst the board was in session, in the absence of the mayor, who could not be found after diligent search. The court, after referring to the provisions of the charter and the Revised Statutes on the subject, say: 'The question whether the Revised Statutes control as to the manner of service is not a material inquiry here, because both the charter and general provision require the service to be made upon the mayor, but no service was made upon that officer as appears by the return of the sheriff. The principle is too elementary to need discussion that a court can only acquire jurisdiction of a party, where there is no appearance, by the service of process in the manner prescribed by law.' In the last case (decided in 1887) service was made in the same manner as in the previous one, and the court say: 'When the statute prescribes a particular mode of service, that mode must be followed. *Ita lex scripta est*. There is no chance to speculate whether some other mode will not answer as well. This has been too often held by this court to require further citations. . . . When the statute designates a particular officer to whom the process may be delivered, and with whom it may be left, as service upon the corporation, no other officer or person can be substituted in his place. The designation of one particular officer upon whom service may be made excludes all others. The temporary inconvenience arising from a vacancy in the office of mayor affords no good reason for a substitution of some other officer in his place, upon whom service could be made, by unwarrantable construction not contemplated by the statute.' " (p. 316.)

As no showing was made that the director, the chief officer under the statute, was not found in the county, there was no service as required by the statute and the justice court acquired no jurisdiction. (*U. P. Ry. Co. v. Pillsbury*, 29 Kan. 652.)

Void judgments are subject to collateral impeachment. (*North v. Moore*, 8 Kan. 143; *Franklin v. Jennings*, 125 Kan. 553, 264 P. 2d 1041.)

As we have seen, the maximum of a six-mill levy permitted by law upon the total valuation of the district could raise only $721.04.

The contract exceeded this amount. The cash-basis law applies to school districts. To allow a school district to exceed the limits set by the law, and to incur an indebtedness not permitted, would in our view violate the letter and spirit of the statute.

The judgment will be reversed with directions that the amount of the judgment be stricken from the budget and the levy, and until that is done the collection of the tax be restrained. It is so ordered.