No. 35,113

J. D. Adams Company, *Appellant*, v. Dor Township, in Smith County, et al., *Appellees*.

(113 P. 2d 138)

Opinion filed May 10, 1941.

*W. S. Rice,* of Smith Center, *Charles L. Hunt, Frank C. Baldwin,* both of Concordia, and *George Siefkin,* of Wichita, for the appellant.

*Arno Windscheffel,* county attorney, *A. W. Relihan* and *T. D. Relihan,* both of Smith Center, for the appellees.

*M. F. Cosgrove,* of Topeka, *W. B. Crowther,* of Salina, *George C. Spradling* and *Austin M. Cowan,* both of Wichita, as *amici curiae.*

The opinion of the court was delivered by

Wedell, J.: This was originally an action in replevin, and in the alternative for the value of the property and for damages for wrongful detention. The issues were subsequently broadened, as will presently appear. Judgment was for defendant, and plaintiff appeals.

The subject of replevin was a road grader. The defendant township obtained possession thereof from plaintiff under a written contract denominated a "lease contract," which was made a part of plaintiff's petition. The contract was executed November 2, 1937. The term was for twenty-four months, commencing April 1, 1938. The contract granted the township two options. One was to extend

the initial term for a second term of twenty-four months. The other option was that the township might purchase the grader at the end of the initial or extended period for the sale price effective on the date of the contract plus six percent interest from date of shipment less credits of all amounts paid under the contract. The contract required a cash down payment of $700. The sale price on November 2, 1937, was $3,400. Under the contract the township obligated itself to pay quarterly thereafter the sum of $337.50, with interest at six percent each consecutive three months. The cash payment of $700 plus the eight installment payments, denominated rental payments, aggregated $3,400. The township paid $1,150 as an initial payment instead of the $700 cash payment required by the contract. It paid the total sum of $1,558.77, the last payment being $50 on January 13, 1939. The township defaulted in its payments as per the contract, and a three months' extension agreement was submitted to the township on January 1, 1939. The township contends the second contract was not executed, but as we view the matter the second contract is immaterial. No payments were made thereunder. The township defaulted, and plaintiff made demand for possession under the express provision of the contract which gave plaintiff the right to repossess the machine upon default. The contract further provided that upon default the township would have no right, title or interest in the property, and no right to demand a return of any lease payments. The petition alleged the reasonable value of the property was $2,200 at the time the action was commenced (July 7, 1939), and that by reason of unlawful detention plaintiff was damaged in the sum of $1,300. In the prayer plaintiff asked damages in the sum of $1,000.

Defendant's amended answer in substance alleged: It was a township in Smith county, and that county did not have a county road-unit system. The obligation created by the contracts had not been budgeted by the township for any of the years involved. No budget made provision for the raising of any fund or money for the purpose of leasing or renting road machinery. There were no funds on hand on November 2, 1937, the date on which the obligation was created, out of which the initial or installment payments could be made. The contracts violated both the budget and the cash-basis laws, and were null and void. These facts were well known to plaintiff. When the contract was made plaintiff orally represented to the township that the purchase price was $3,400, and that the township would not be required to pay the full purchase price at once, but that it could pay

it in installments. It was the intention of plaintiff that title and possession of the machinery should vest in the township. It was plaintiff's intention to effect a sale and avoid the provisions of the budget and cash-basis laws by means of the agreement. The citizens and taxpayers of the township had no knowledge of the alleged agreement. If the former township board signed the agreements, it had no lawful right or authority to do so, and plaintiff is not entitled to the aid of the court in any manner, and its action should be dismissed.

The cross petition of the defendant incorporated the averments of the answer, and in substance further alleged: The total payments made to the plaintiff by the former township board in the sum of $1,558.77 were unlawfully made, and were void as to the township itself. The contracts, and the payments made pursuant thereto, tended to defraud the taxpayers of the township. Plaintiff was indebted to defendant in the sum of $1,150 paid December 27, 1937; in the sum of $225 paid June 27, 1938; in the sum of $119.35 paid October 17, 1938; in the sum of $64.42 paid December 28, 1938, together with interest at six percent per annum on the respective amounts from the dates they were paid. Plaintiff wrongfully and willfully refused to repay such amounts.

Defendant's prayer was that plaintiff be denied any relief, and that judgment be rendered against plaintiff in the amount above stated together with interest at six percent per annum.

Plaintiff's amended reply to defendant's answer and its answer to plaintiff's cross petition were in substance as follows: It denied all matters pleaded by plaintiff which it did not expressly admit. The former township officers in good faith, and without any intention of violating any law, procured independent legal advice touching the legality of the transaction in contemplation, and which was later consummated, and were advised the contract was entirely legal. The contract was not intended to be an evasion of the budget or cash-basis laws or of any other law. If the contract was in any respect illegal the township waived such illegality. The township officers were by law charged with the duty of properly maintaining the highways of the township, and for such purpose it was proper for it to acquire the necessary machinery by purchase, lease or otherwise. The purpose for which possession of the machinery was obtained was legal, and the action of the township in acquiring such possession was valid notwithstanding any alleged illegality in the contract it-

self. If the contract was illegal and void defendant never had any legal or rightful possession of the machinery, and plaintiff was at all times and is now entitled to the possession thereof. The amounts paid by defendant officers or their predecessors to plaintiff for the use of the machinery do not exceed the fair usable value thereof, during the period it has been in the possession of defendant. The use of the machinery made by defendant from the time it was delivered to it has resulted in depreciation in its value in an amount equal to or in excess of the money paid by defendant. Defendant is barred and estopped from seeking a return of the money paid for the use of the machinery. The amended answer and cross petition of defendant fails to state facts sufficient to constitute any defense to plaintiff's petition, or a cause of action in favor of the defendant. In the prayer plaintiff asked for judgment as prayed for in its petition.

Defendant filed a reply which contained a general denial of the averments contained in plaintiff's answer, and in substance further alleged the contract violated the budget and cash-basis laws, and that there was no authority or lawful right by which any other obligation could be created against the township.

It was the judgment of the trial court the contracts were null and void and unenforceable, and that all rights growing out of such contracts were likewise null and void and unenforceable. The court refused to order defendant to return the machinery to plaintiff. Defendant was given judgment for moneys unlawfully paid by the township officers to plaintiff in the sum of $1,558.77, together with interest at six percent from the dates of the various payments, or in the total sum of $1,813.51, with interest at six percent per annum from date of judgment. Plaintiff was denied any right of offset on that judgment in the form of damages, or for the reasonable value of the use of the machinery while it was in defendant's possession.

In view of the record the rights of the parties do not depend upon the nature of the contract, that is, whether the contract constitutes a lease or a sale of the machinery. Whatever the nature of the instrument might be it created, if valid, an indebtedness or obligation payable in cash and installments. Some of these obligations were met by payments. The obligations could be legally incurred and legally paid only in the mode or manner required by the budget and cash-basis laws. They were not so incurred or paid. The budget made provisions for various items under the road fund, but made no provision whatever for the instant item of machinery, whether to be

purchased or leased. The only amount budgeted for machinery in the years 1937 and 1938 was $50 and $100, respectively. Obviously, funds were not legally made available for this purpose, and in fact were not available at all. The payments could not be made from funds budgeted for other purposes. The result is that neither the contract nor payments made thereunder were valid. They were void. (*Patterson v. Montgomery County Comm'rs*, 145 Kan. 559, 66 P. 2d 400; *Superior Grade School District No. 110 v. Rhodes*, 147 Kan. 29, 75 P. 2d 251; *Shouse v. Cherokee County Comm'rs*, 151 Kan. 458, 99 P. 2d 779.) The payments being void as against the taxpaying district, the trial court properly held the payments illegally made by the township officers could be recovered by the township. (*Superior Grade School District No. 110 v. Rhodes*, supra.) The principle upon which municipalities are permitted to recover illegal payments is that such payments cannot be regarded as acts of the municipality, but in reality constitute unauthorized and prohibited acts of its officials. (*Honey v. Jewell County*, 65 Kan. 428, 70 Pac. 333; *Ritchie v. City of Topeka*, 91 Kan. 615, 138 Pac. 618; 7 R. C. L. 964, § 38; 44 C. J. 1145, 1146, § 4089.)

Can the township recover the money it paid to plaintiff and also retain the machine? The township, as heretofore stated, is permitted to recover the moneys its officers paid upon the principle that a township is not bound by the illegal acts of its officers. Will the township, however, be permitted to recover what its officers illegally pay under a void contract and also retain the property its officers illegally obtain under the same void contract?

The record discloses the trial court reluctantly refused to order delivery of the machine to the plaintiff. Its refusal to make such order was based upon the theory courts cannot lend their aid to the enforcement of an illegal contract. Was it necessary to enforce a contract in order to require defendant to return the machine? The contract was void. There was, therefore, no contract to enforce. Defendant had acquired neither title to the machine nor the right to its possession. In legal contemplation those rights remained in the plaintiff just the same as though no contract had ever been made. In order to give plaintiff possession of the machine it was unnecessary to enforce a contract. It was only necessary to say that since, in legal contemplation, no contract existed, plaintiff was required to return the money it had received, and defendant was required to return the property it had received. In other words, by such a decree

both parties would have been placed *in statu quo* insofar as their contractual relation was concerned.

In a discussion of the subject whether courts will lend their assistance to parties who have made an illegal contract, it is important to bear in mind certain fundamental factors. It is not contended the instant contract itself was immoral, inequitable or unjust. The object of the contract was perfectly legal. It was executed for a legitimate purpose, namely, in order to enable the township officers to maintain township roads. That was their statutory duty. The township officers did not lack power to make such a contract. They only failed to exercise that power in the mode or manner required by law. It was only by reason of such failure that the trial court held the contract illegal.

Bad faith on the part of the plaintiff was made an issue by the defendant. Bad faith or fraud cannot rest on mere suspicion or surmise. It must be clearly established. Touching this subject we have examined the comments of the trial court with particular care. The trial court did not find or intimate either of the parties were prompted by sinister motives. On appeal we are therefore obliged to conclude actual fraud or bad faith were not established. On the other hand, the comments of the trial court affirmatively disclose the contract was held illegal by reason of the fact the township did not comply with the requirements of the budget and cash-basis laws. We therefore approach the case upon the theory the trial court held the contract illegal solely for that reason.

Courts have frequently granted the same or similar relief to that sought by plaintiff where no legal remedy existed on the contract, and where the contract was not void by reason of fraud or lack of power to contract, but where the contract was void merely by reason of the failure of municipal officers to legally exercise the power. (*Salt Creek Township v. Bridge Co.*, 51 Kan. 520, 33 Pac. 303; *Lee v. Board of Com'rs*, 114 Fed. 744, 746; *City of Bardwell v. Southern Engine and Boiler Works*, 130 Ky. 222, 113 S. W. 97, 20 L. R. A., n. s. 110, and annotation; *Snouffer & Ford v. City of Tipton*, 161 Ia. 223, 235; *Shaw v. Board of Education*, 38 N. M. 298, 31 P. 2d 993, 93 A. L. R. 432, and annotation, 441.)

In the Salt Creek Township case, *supra*, a bridge was involved, and this court said:

"Of course, as the bridge was constructed upon the highway with the permission of the authorities, the company may remove the same. As the town-

ship refuses to pay for the bridge, it can have no interest or right to keep it. All the parties acted without any statutory authority." (p. 527.)

In the Lee case bridges were likewise involved, and the federal court held:

"There is no public policy recognized by the courts which allows any person, natural or artificial, to take the property of another, and appropriate it to its own use, and deny to the person who is innocent of fraud the right to reclaim it. As there was no contract binding on either party in this case, and there was no fraud on the part of the bridge company or this complainant, and the property is in existence and in the hands of the defendant, it seems clear that the relief asked for should be granted. The case seems to come entirely within the principles laid down by the supreme court in the case of *Chapman v. Douglas Co.,* 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378. See, also, *Wrought Iron Bridge Co. v. Town of Utica* (C. C.), 17 Fed. 316." (p. 747.)

In the Kentucky case, *supra,* the vendor was permitted to sell an engine located in the defendant city's electric light plant under the vendor's lien clause of the contract. That court said:

"A loss must not be placed upon the district, but, when justice may be done without inflicting any loss upon the district, equity will lay hold of the conscience of the parties, and make them do what is just and right." (p. 234.)

In the Iowa case, *supra,* a contractor was permitted to remove paving where it could be done without substantial injury to the street. In the New Mexico case, *supra,* school buildings were the subject of controversy. It was held:

"Municipality cannot acquire property under invalid contract, and, because of such invalidity alone, avoid paying contract price or reasonable value of property and at same time retain property." (Headnote 1.)

In the opinion the court remarked:

"We think it out of harmony with the sense of fair dealing and justice, for which the good people of these two' school districts and Lea county are well known, to retain buildings so acquired after realizing that the obligations which produced them are invalid." (p. 308.)

An exhaustive annotation upon the instant subject is found at the conclusion of the opinion in the New Mexico case, at 93 A. L. R., page 441, and further citation or quotation from the authorities is deemed unnecessary. For other cases of our own in which relief, other than on the contract, was granted with the view of an equitable adjustment, see, also, *Brown v. City of Atchison,* 39 Kan. 37, 17 Pac. 465; *Ritchie v. City of Wichita,* 99 Kan. 663, 163 Pac. 176.

Is plaintiff entitled to recover damages from the township for wrongful detention of the machine as prayed for in its petition? We

think not. Its claim to the right of possession was based entirely upon the terms of the contract. Damages were claimed by reason of a breach of the terms of that contract, *i. e.*, as a result of defendant's refusal to permit plaintiff to repossess the machine in the event of default in "so-called" rental payments. The contract was illegal, and, obviously, it could not form the basis of an action for damages. In the case of *Ritchie v. City of Wichita*, 99 Kan. 663, 163 Pac. 176, involving the same principle, relief was given the paving contractor for work actually performed. Touching other claims, including a claim for damages, this court said:

"But we can give no countenance to plaintiffs' claims under their contracts, nor for loss of profits, nor for expenses in bringing the materials to the place of work, nor for damages. It is only by a somewhat vigorous interposition of equitable principles that any relief whatever can be accorded in a situation like the case at bar." (p. 670.)

Whether plaintiff might have recovered damages for wrongful detention upon some other theory we need not decide, but it could not do so upon the theory it was damaged by the breach of a contract when no legal contract existed. The court is now assisting it in obtaining possession of the machine, not by virtue of the efficacy of its contract, but solely by reason of the fact it would be unjust and inequitable to permit defendant to recover what its officers illegally paid, and also to permit it to retain the property it had illegally acquired by virtue of the same illegal contract.

Is plaintiff entitled to recover the reasonable rental value of the use of the machine during the period it was in the possession of the township? Plaintiff contends that, notwithstanding the illegality of the contract, it is entitled to such rental value for the reason the township has received the benefits from the use of the machine. The period of such use was approximately twenty months. The reasonable rental value, according to the evidence, was $150 per month, which would make a total rental value of $3,000. In support of its contention plaintiff relies upon various cases contained in an annotation, 42 A. L. R. 632, upon the subject: "Liability of municipal corporation upon implied contract for use of property which it received under an invalid contract." It also directs our attention to a subsequent annotation, touching the subject of recovery of rental value, found in 93 A. L. R. 441, 450-451. It would appear these cases support plaintiff's contention. It will serve no useful purpose to repeat the careful and exhaustive analysis already made by the annotators.

In the instant case plaintiff had received total payments on the contract in the sum of $1,558.77. Although it contends it is entitled to recover the reasonable rental value of the machine in approximately the sum of $3,000, it in fact asks only a setoff for rental value equivalent to the payments the township has made to it under the contract. Whatever amount, if any, is allowed to plaintiff of necessity would be allowed upon the basis of an implied contract of the township to pay for the reasonable value of the use of the machine. The court has concluded that to permit any recovery upon the theory of reasonable rental value would constitute the enforcement of an implied contract where an express contract is prohibited by law. In other words, it believes such a decision might open the door to circumvention of the intent and purpose of the budget and cash-basis laws by permitting a municipality to use machinery, and to become liable for such use, without entering into an express contract in compliance with the statutory requirements of those laws. The result would be to do indirectly that which it is forbidden to do directly.

The judgment of the district court will therefore be affirmed except as to the machine which plaintiff may repossess upon payment of the money judgment rendered against it. It is so ordered.

WEDELL, J. (dissenting in part): I concede some of the questions presented are not free from difficulty. I am, however, obliged to dissent from that portion of the opinion which permits the township to retain the benefits of the illegal use of the machine. That result is contrary to principles announced in various decisions of our own, and is contrary to the great weight of authority in other jurisdictions. (*Brown v. City of Atchison,* 39 Kan. 37, 17 Pac. 465; *Ritchie v. City of Wichita,* 99 Kan. 663, 669, 163 Pac. 176; Annotations 42 A. L. R. 632 and 93 A. L. R. 441, 450.) Where justice may be done, without inflicting any loss upon the municipality, equity will lay hold of the conscience of the parties and make them do what is just and right. (See authorities cited in majority opinion.) It seems to me that under the majority decision the court applies the foregoing equitable doctrine only in part and stops short of its full and just application. That the township need suffer no loss by its complete application will be demonstrated presently.

The budget and cash-basis laws were never intended to permit a municipality to gain an unconscionable advantage by virtue of an illegal contract of its officers. Their intent and purpose was to pro-

tect the taxpayers of municipalities and the various subdivisions of taxing units. If a decision can be reached which need not result in a financial loss to the township, and which will not permit the township to obtain an unconscionable advantage over the other contracting party, and which, at the same time, will not result in the circumvention of the budget and cash-basis laws, I think the decision would be just and unassailable. I think such a decision can be reached.

A setoff in favor of the plaintiff to the extent of the payments the township officers made, which is far less than the reasonable value of the use of the machine, can be effected without sacrificing any of the objectives stated. The reasoning of the majority is that to allow such a setoff to plaintiff would in effect be making the township pay rentals upon the theory of implied contract, where an express contract is prohibited, and thus undermine the budget and cash-basis laws. It seems to me there are two fallacies in that reasoning. I agree that ordinarily a contract will not be implied against a municipality where an express contract is prohibited. (*Johnson County Sav. Bank v. Creston,* 212 Ia. 929, 231 N. W. 705, and annotation 84 A. L. R. 936, 954.) An express contract to purchase or lease road machinery was not prohibited in the instant case. It was only the mode or manner in which the actual power to make such a contract was exercised that was prohibited. It is well established that a municipality, under the latter circumstances, may be held liable upon the theory of an implied contract where it has actually received the benefit of labor or material or the use of machinery. (*Brown v. City of Atchison,* supra; *Ritchie v. City of Wichita,* supra; Annotations 42 A. L. R. 632 and 93 A. L. R. 441, 450.) It is also inequitable to permit the township to unjustly enrich itself under an illegal contract at the expense of the other contracting party. (*Brown v. City of Atchison* and *Ritchie v. City of Wichita,* both *supra.*) The setoff sought in the instant case should be allowed.

In the second place the township need suffer no loss by reason of the setoff in favor of the plaintiff to the extent of the payments made by the township officers. Those payments were illegally made by the officers, and the township may recover them from its officers and their bondsmen. (*Superior Grade School District No. 110 v. Rhodes,* 147 Kan. 29, 75 P. 2d 251.)

It may be well to touch upon one other point. It pertains to the fear that the allowance of any setoff to plaintiff upon the theory of implied contract might result in a breakdown of the budget and cash-

basis laws. If I entertained such fear I should oppose the allowance of the requested setoff in the instant case. In my opinion municipal officers cannot circumvent the budget and cash-basis laws by means of an implied contract, and thus relieve themselves and their bonds-men from civil liability for illegal payments on implied contracts. Those laws make no exception in the case of an implied contract, and certainly courts will not permit those laws to be circumvented by arbitrarily reading such an exception into them. The sham of officers obligating a municipality for the reasonable value of the use of machinery by merely using it without entering into an express contract would be too obvious and transparent to mislead anybody. It seems to me the responsibility for illegal transactions under the budget and cash-basis laws should be placed by courts where the lawmakers intended and provided it should be placed. That duty and responsibility was placed upon the officers of municipalities and other taxing units. It is the officers who transact their business. The lawmakers were fully aware of that fact. For that reason they directed their attention to the duties and responsibilities of officers. For the same reason the lawmakers made the officers subject to removal for a violation of the provisions of the budget law. (G. S. 1935, 79-2936.) For that same reason the lawmakers made the officers guilty of malfeasance for knowingly violating the provisions of the cash-basis law, made them subject to removal from office, and to a penalty for violating its provisions and for neglect or refusal to perform any duties imposed under that law. (G. S. 1935, 10-1121.)

Now, I am not unmindful of the fact that parties contracting with governmental units ordinarily are not excused for failure to ascertain whether the officers of governmental units have complied with the requirements of the budget laws, which proceedings, if regularly recorded, are available to them. The lawmakers, however, did not make those contracting parties guilty of a misdemeanor for failure to first obtain such information. They placed the responsibility for the proper exercise of contracting power upon the officers of governmental units, where it belongs. Of course, if the officers fail to comply with the requirements of the law the contract itself is unenforceable by either party, but where the municipality has actually received the benefits of the illegal transaction, as here, and need suffer no financial loss by an equitable adjustment of the benefits it has received, I think it is only just and proper that courts require such adjustment to be made. It was in exactly such a situation where

634

this court in *Ritchie v. City of Wichita,* supra, allowed a paving contractor to recover for work actually performed under the illegal contract. We said:

"A majority of the court are of opinion that the case at bar falls within the general principle that where a municipal corporation receives a service, or property, or an improvement, which it retains and uses, common honesty requires that it make payment therefor, where the matter is not tinctured with moral turpitude nor altogether beyond the statutory power of the corporation to acquire or procure." (p. 669.)

That doctrine is also amply supported by cases contained in the annotations at 42 A. L. R. and 93 A. L. R. previously cited, and see, also, 7 R. C. L., § 22, pp. 946, 947.

HOCH, J., concurs in this dissent.

DAWSON, C. J. (dissenting in part) : The same principles of equity applied in *Brown v. City of Atchison,* 39 Kan. 37, 17 Pac. 465, and *Ritchie v. City of Wichita,* 99 Kan. 663, 163 Pac. 176, seem to me to justify and require a deduction from the amount of money which plaintiff should return to the township—based on the value of its use of plaintiff's machinery. That our Brown and Ritchie cases are in accord with textbook authority, see 7 R. C. L. 947, and citations under note 13. In other respects I concur in the opinion of the court.